I will address the use of acquitted conduct specifically in my ten minutes. For defendant appellant Daniel Bravo, we come before the court today with a very interesting set of facts in light of this court's recent ruling in U.S. v. Ameline, which came down on July 21st. You know, Ameline is not final. The Supreme Court has granted certain a couple of cases, so I don't know how much time you want to spend arguing what's really up in the air. I would actually like to address that issue. I do understand, as Your Honor has pointed out, that the Seventh Circuit's case in Booker and the District Court opinion in Fanfan are both now before the Supreme Court, so we don't know what the fate of Ameline or Blakely in general is going to be, perhaps, by the end of the fall of this year. But to the degree that the Supreme Court does, in fact, perhaps surprise us by supporting the Ninth Circuit's decision in Ameline, what I would like to do in my ten minutes is present to this court why that decision, in fact, is quite favorable for a remand and re-sentence, because what we have for Mr. Bravo is a remarkable disparity between the base offense level, as which reflects under the Blakely and Ameline concept of severance. That is, no sentencing enhancements considered, only — All that difference due to the addition of the things for which the jury acquitted him? That is correct. And let me be more specific. We use the term acquitted conduct, but here in this case it goes beyond that. In count one, which is the main racketeering charge of conspiracy, there was a very detailed special verdict where the jury was asked to establish whether or not certain overt racketeering acts were proven or not proven as to the individual defendants. And as to my client, Bravo, the jury uniformly found in its special verdict for count one that the government did not prove any of the racketeering acts. So what we have under a Blakely and Ameline analysis is not only the use of acquitted conduct, but the use of facts found solely by the district judge, as to which the jury already made a So it goes beyond the traditional concept of just using acquitted conduct. To take it even one step further, Judge Carter even considered some uncharged conduct, which elevates the Blakely and Ameline analysis to yet a third level. So now we have acquitted conduct in the traditional U.S. v. Watts sense of the word, the special verdict findings of not proven in favor of the defendant, and uncharged conduct. Three different categories where the Blakely-Ameline analysis would say the district court clearly cannot do that because, as we now know, the Sixth Amendment provides for the sentencing jury to make that decision. The use of uncharged, I assume your position would be, and you can correct me, uncharged conduct could be cured on a resentencing with a, with a sentencing trial. I submit to Your Honor that the only matter that could be before a sentencing jury in this case for Mr. Bravo would be the quantity of drugs. He was convicted on two charges, counts two and three. One of them is a conspiracy to distribute narcotics. Judge Carter made no factual findings on that issue for sentencing. The sentencing was driven entirely by the court's factual finding regarding Mr. Bravo's alleged participation in the murders, which brought the offense level all the way to 46 and resulted in a statutory maximum sentence of 240 months, 20 years. There was no factual finding by the court, and, Your Honor, the sentencing jury, if it were allowed to consider drug quantity. But that would be the full extent, I submit to Your Honor. There could be no consideration of any of the matters as to which not proven was the finding in the special verdict or as to which the jury acquitted. Now, if the Sixth Amendment analysis in Ameline is to be applied logically, then anything outside the scope of the indictment should not be before the jury at all because it is not even part of the charge. What we have in the Ameline analysis is a focus entirely on the offense of conviction. I agree that that case did not involve the use of acquitted conduct. We have unique facts here. But when we look at Ameline closely, the entire thrust is the four corners of the indictment. What was the offense of conviction, and to what extent did the court within that framework take it upon itself to make factual findings for sentencing? I submit to Your Honor that to go outside the indictment and to allow matters to be made, to allow matters that are extrinsic to the offense of conviction, violates the Sixth Amendment analysis in that case. What I would ask this Court to do, and one of the reasons I think it is important to discuss Ameline here, where we have such a huge disparity between a big offense level range of 30 to 37 months under a severance analysis, which is what the PSR proposed, the pre-sentence report, and the 240-month sentence, which was actually imposed pursuant to the very issues that Blakely and Ameline have said are improper. What I think this Court needs to do, I submit, is to expand Ameline to specifically provide that uncharged conduct, acquitted conduct, and conduct as to which special verdicts have been resolved favorably to the defendant should be matters as to which the sentencing court is not authorized to make any findings. Now, what is important here is to also be specific that Ameline doesn't allow these  kinds of situations. The jury has already spoken. The jury has already spoken favorably to the defense. And so in a situation of this kind, it's finished. There is no future opportunity for these matters. I submit to Your Honor, the answer is yes, because that goes outside the context of the indictment. It is not part of the offense of conviction. And finally, before I turn the matter over to my colleague, Mr. Ander, as we look closely at what portions of the sentencing guidelines may have to be found unconstitutional, although the entire structure is not facially invalid, but certain provisions may raise constitutional questions. And here, 1B1.2 was the pivotal guideline section that drove the sentence for my client. And that provision states that in a conspiracy involving multiple objects, which is a classic example in a racketeering case, 1B1.2 specifically says that the defendant will be sentenced as if convicted for each of the objects of that conspiracy. Using that sentencing guideline provision, 1B1.2, as the premise, Judge Carter then went ahead and made his findings that my client had, in fact, been involved in those objects, the murders, et cetera, raising the Ameline issues. I submit to this Court that if Ameline and Blakely are, in fact, involved, then 1B1.2 cannot survive constitutional scrutiny, because it provides for an automatic result, that is, the automatic sentencing of a defendant based on the objects of the conspiracy, without in any way allowing for a jury to make those decisions, or, as we did in this case, allowing a judge to override a jury's findings, whether it's the findings in the special verdict or the findings of not guilty. And so there is a mechanism that is already built into 1B1.2, which I believe violates Ameline and Blakely. Your Honor, if this Court were to apply a traditional U.S. v. Watts analysis, as your Honor had suggested, are we getting ahead of ourselves with Blakely? Perhaps we'll spend just a moment on winding the clock back, as if Blakely had not existed, and why would acquitted conduct still be improper under a traditional pre-Blakely analysis. U.S. v. Watts involved a general verdict. There was no special verdict in that particular case. And the Supreme Court did, in fact, permit the use of acquitted conduct, because the jury simply had not spoken. I submit to this panel that therein lies the pivotal distinction, and sets this case apart. Because the jury has spoken, both in the special verdict and in the acquittals, the jury has specifically articulated its conclusion that my client was not involved in any of the racketeering acts. We have a circumstance entirely different from what was before the Supreme Court in Watts. And with those comments of the Court, please, I'll turn the remaining minutes over to my colleague, as we approach 12 minutes. All right. Thank you, Counsel. Thank you. May it please the Court. The sentencing issues on both these defendants are essentially the same. In both cases, the probation report came back with a guideline sentence recommendation of 30 to 37 months, which would have been a time served sentence, because these defendants had been in jail for more time than that when they came up for sentencing. The Court determined to use acquitted conduct to increase the sentence from a time served sentence to a maximum sentence. I don't think the Court has to look to Ameline to decide that the use of acquitted conduct no longer is appropriate. The Court only has to look to the language in Blakely. Blakely indicated that a judge may impose a sentence solely on the basis of facts reflected in the jury verdict or admitted by the defendant. In this case, the judge chose to increase the sentence based on findings that the jury had rejected. The jury specifically rejected that these defendants were guilty of the charges that the judge used to increase the sentence. They found both during the... When they filled out the verdict forms, they found the defendants to be not guilty on the substantive counts. They also made specific findings that they were not proven when they were realleged as acts of racketeering in the RICO count. So this is a case... Is there a distinction between not guilty and not proven in the jury's mind? Yes, I think you can argue there's a difference. But I think when you have a not guilty verdict, as the Court said in Watts, this opened the speculation of what they meant. But when a jury says specifically in the acts of racketeering the government had failed to prove the counts, I think we know why the jury reached this verdict. And I think that specificity means that even without Blakely, this case is a distinguished one from Watts. But I would submit to the Court that after Blakely, it's not possible to reconcile the holding in Blakely, the holding in Watts. They cannot be reconciled. And I would suggest that the only logical reading is that Watts does not survive the holding in Blakely. I would love to have that be the case since I was on the Ninth Circuit case that was reversed. But I think maybe we need to let the Supreme Court speak once more. Well, I assume that that's what's going to happen here, that we're not going to hear from this Court until the Supreme Court has given us some further guidance in October. But the clear rationale in Watts was that the Court can use acquitted conduct to entice a sentence because it can be considered under a lower standard of proof. After Blakely, that clearly can't be the law anymore. So I would suggest that Watts and probably Harris v. United States are no longer good law. I hope so. And if that's true, then clearly the Court's increase of the sentence in this case by using conduct that the jury rejected can't stand either. So with those comments, I would submit. All right. Thank you, Counsel. If you may please the Court, Fred Rowley, Jr. for the United States. I'd just like to take a couple of points that the defense raised in sequence. The elephant in the room is obviously Blakely and Ameline. And the government agrees with Judge Fletcher that these issues are up in the air and the most appropriate thing for the Court to do would be to hold the case pending the outcome in Booker and Fanfan, which the Court knows the Supreme Court has now taken cert on, in order to resolve any Blakely or Ameline claims. Now, another thing that the defense counsel for Defendant Bravo mentioned was the scope of the remand. Could these defendants be retried on the acquitted conduct counts or the uncharged defenses on remand? And the government submits that it's premature for this Court to pass on that. That's something. Well, I think the answer is pretty clear on the acquitted counts, don't you think? Your Honor, if, again, if Blakely and Ameline live or if Blakely applies the guidelines and Ameline is correct, then the defendant's Sixth Amendment rights were clearly, I think, clearly violated by the sentences. But if the Supreme Court doesn't apply Blakely to the guidelines, there's no Sixth Amendment problem and the government submits that there would be no double jeopardy problem. And to address another point, I think that the defense conflates two constitutional rights in making its arguments about what the scope of remand would be, and that is the Sixth Amendment right to jury trial and double jeopardy. Blakely doesn't address whether Watts is still good law. Blakely is focused only on the Sixth Amendment jury trial right. And to pick up on something that Judge Fletcher mentioned, Watts doesn't just discuss the preclusive effect of a jury's prior acquittal, although it does go through that in some detail. It also emphasizes that when a defendant is, I'm sorry, when a defendant is sentenced on acquitted conduct or on uncharged conduct that relates to a count of conviction, the defendant is not punished for that uncharged or acquitted conduct. So there would be no double jeopardy bar to the government pursuing, as Judge Candy suggests, a trial that focused on the acquitted counts as a form or as a means of punishing the defendant for the counts on which they were convicted. And they were convicted on RICO conspiracy. But be that as it may, that's all, those are all matters that would be litigated in the first instance on remand. And the government submits that they couldn't be properly resolved anyway until the Supreme Court spoke on the Blakely and Amoline issues. And another point that the defense made was that the sentences would be unconstitutional even under a conventional Watts analysis, assuming that Watts lives. And the government submits that that's not right. The first point, the critical point is, again, that the defendants were not punished for purposes of double jeopardy for the Montebello murders. They were punished for the RICO conspiracy. Yes, but counsel, if in fact you would have to put before the jury a question of whether they were guilty on these other counts, certainly you're going to get into something akin to double jeopardy. Your Honor, it's possible that the Supreme Court will come back and revisit some of its double jeopardy jurisprudence if it does apply Blakely to the guidelines. I'm not saying that that's not possible. But in Blakely, certainly, they did not address the double jeopardy line of cases. And in fact, in Amoline, this Court distinguished Watts as a double jeopardy case in applying the defendant's Sixth Amendment right to a jury trial to the guidelines. So they could be separated. I think we're wasting both our times kind of speculating on what the Supreme Court's going to do. Sure, Your Honor. I wanted to actually just make the point that under a conventional Watts analysis, there is no double jeopardy problem with the way that the district court approached the sentence in this case in its consideration of the acquitted conduct. That under Watts, there was no double jeopardy violation, as the defendants argued in their opening brief. And to move on to another point, the defendants, when they talk about the special verdict form, they treat it as though the jury made specific findings of fact. And that's not right. The special verdict form asked the jury whether the defendants were guilty of specific racketeering acts underlying the RICO, the substantive RICO count. And the jury was charged with the elements of those crimes. That is to say, they were asked whether the defendants were guilty of substantive offenses. It wasn't just a series of questions about the facts of the Montebello murders. They were actually charged racketeering offenses. And so the same concerns that Watts talked about, about drawing factual inferences from an acquittal, and that this Court talked about in Jackson, I think, would obtain in this case even under a traditional Watts analysis. Well, it may narrow them very considerably. When you have a general verdict, you don't know which part, you know, where the defect might have been in the government's whole required fabric of proof. But if you have a bunch of special verdicts, at least for the things that are addressed in them, you've got the jury saying something. That's certainly right, Your Honor. But again, what the special verdict asked the jury to answer was whether the defendants were guilty of racketeering acts. And those racketeering acts themselves were charged offenses. For example, with the Montebello murders, they were charged murders. And the jury was instructed on the elements of murder. And I believe they were also instructed on aiding and abetting liabilities. So it's not like the jury was asked, for example, did the defendants have something to do with the Montebello murders? Or was Defendant Mercado at the scene a block away on the day of the murders? I mean, there weren't specific factual questions asked about offenses. Well, were they asked whether they committed the murder? They were asked that, but they did, Your Honor. But again, there are elements to that offense. And so, again, drawing factual inferences from the acquittal would pose the same problems, I think, that it posed in Watts and also in Jackson, because, again, which elements did the jury Well, you're sort of saying that the judge in resentencing could say after a trial and maybe jury trial that, well, although they didn't commit murder, they might have committed one or two of the elements of a murder. And I'm going to increase the offense level because of that. Well, Your Honor, as Judge Carter noted at sentencing, what he was doing was applying 1B1.2D. And that asks whether the defendants conspired to commit the murder, conspired to commit the murders. I mean, it's a different inquiry. And that's really why the more important point, apart from whether there's overlap in the legal analysis as to whether the defendants were responsible for the Montebello murders, the broader point is that they're not being punished as a double jeopardy matter for those murders. I mean, that's, I think, the linchpin of the analysis, and that's why there can't be a double jeopardy problem. And what's... I think what was hinted at by Judge Fletcher is that if the burdens of proof are the same, you may have a Pope against Ashelman problem, in other words, collateral estoppel or something, the same issues being presented in a sentencing that was already decided between the parties at the same level of burden of proof. That could well be, Your Honor. I think that would have to be the subject of litigation below, in trying to decide what the scope of a retrial, what the retrial would be. Although it is interesting, there is... Although Judge Carter applied 1B1.2 and found the defendants' involvement in the murders beyond a reasonable doubt, there's a circuit split, as the government points out in the Fernandez brief. There is a circuit split on whether you should apply or need to apply 1.1B1.2D in a RICO conspiracy case to find the objects of a RICO conspiracy. I believe that Sixth Circuit and maybe the First Circuit have held that you don't need to do that. And the reason is that the object of the RICO conspiracy is the racketeering activity itself. And the specific crimes that were committed in furtherance of the racketeering activity are just relevant conduct. So you would apply a preponderance standard, although here with an enhancement of this magnitude under this Court's cases, you would apply clear and convincing evidence. And so there actually... This Court could affirm, assuming all these amyling problems don't obtain, could affirm on the basis that the judge didn't really need to apply a beyond a reasonable doubt standard under 1.1B... I'm sorry, 1B1.2D. And if the Court has no further questions, Governor Ginsburg. Any rebuttal? All right, thank you to both counsel. Submission of this case is deferred, subject to further order of the Court. The final case on calendar for argument is United States v. Fernandez et al. It's me now. She says we have extra time. Yeah.
judges: B. Fletcher, Canby, Rawlinson